RICHARD E. RAMPONI vs. BOARD OF SELECTMEN OF
WEYMOUTH & others.[1]

No. 88-P-85.

Norfolk. November 15, 1988. — January 27, 1989.

Present: ARMSTRONG, KAPLAN, & BROWN, JJ.

*Constable. Municipal Corporations*, Officers and employees, Group insur-
ance, Selectmen, Estoppel. *State Administrative Procedure Act. Statute,*
Construction. *Estoppel. Words,* "Employee."

A constable did not qualify as an "employee" within the meaning of G. L.
c. 32B, § 2(*d*), entitling him to coverage under a town's group insurance
plan, where the constable had no fixed duties for the town requiring any
set number of hours, and did not agree to undertake any stated number
of jobs for the town; where he did not receive a salary from the town
but, rather, charged for each particular job; and where most of his work
was done, not for the town, but for other municipalities and private
persons. [827-829]

A town's board of selectmen, which had initially decided that a certain
person was eligible as an "employee" within the meaning of G. L.
c. 32B, § 2(*d*), for coverage under the town's group insurance plan, but
which, on the town treasurer's questioning the board's interpretation of
§ 2(*d*), subsequently removed the person from the plan, was not precluded
by language in § 2(*d*), stating that a determination by the selectmen that
a person is eligible shall be "final," from correcting their initial mistaken
view of the law; nor was judicial review of the board's "first" decision
precluded by the "shall be final" language of § 2(*d*). [829-830]

CIVIL ACTION commenced in the Superior Court Department
on August 30, 1985.

The case was heard by *Constance M. Sweeney,* J., on mo-
tions for summary judgment.

---

[1] The town of Weymouth and the treasurer of Weymouth.

*Robert L. Marzelli* for the Board of Selectmen of Weymouth & others.

*Leo S. McNamara* for the plaintiff.

KAPLAN, J.   The plaintiff Ramponi has been one of the appointed constables of the town of Weymouth since April, 1970. He applied to the Weymouth selectmen in December, 1974, to have them recognize him as an "employee" within the meaning of § 2(*d*) of G. L. c. 32B, as amended through St. 1982, c. 615, § 5, the statute which makes provision for a group health insurance plan whereby the town pays one-half the amounts of the premiums charged to the employees. The selectmen decided in Ramponi's favor. This decision was questioned in October, 1977, by the town treasurer, but the selectmen did not budge. When, in July, 1985, the treasurer renewed the question, the selectmen voted to remove Ramponi from the plan.[2] Thereupon Ramponi commenced the present action for a declaratory judgment of reinstatement. Upon cross motions for summary judgment, a judge of the Superior Court entered judgment for the plaintiff. We reverse. Ramponi does not qualify as an "employee" and there is no bar to the selectmen's correcting their initial mistake of law or to the court's reviewing such a legal determination.[3]

1. As shown upon the motions for summary judgment, Ramponi holds appointment as a constable not only by the Weymouth selectmen but also by the appointing authorities in five other towns and the city of Quincy. He also does some work as an auctioneer and a justice of the peace. A constable's main authorized function is to serve process and the like. See G. L. c. 41, §§ 91-95. The municipality may ask him to make a service and so may any private person. For each service he

---

[2] Ramponi had actual notice of the public meeting at which the action was taken, attended it, and spoke. The charges of political motivations Ramponi makes in his brief find no support in the record and are mere distractions from the issue of law.

[3] The State Administrative Procedure Act, G. L. c. 30A, does not apply to the review of a decision by a board of selectmen. See *Fratus* v. *Selectmen of Yarmouth*, 6 Mass. App. Ct. 605, 608 (1978). No question is raised whether the present action would be better styled as an action in the nature of certiorari than as an action for a declaration.

makes, the constable charges a fee. In fact private requests usually will greatly outnumber those from the municipality.

In the nature of a constable's work, he does not undertake to do any, stated number of jobs, nor does the municipality exact any such stipulation. What work he does depends on the requests that happen to be made of him and his willingness or ability to comply with the requests. In light of these circumstances, it will be seen that a constable is not eligible as an "employee" under G. L. c. 32B, § 2(*d*) (quoted in part in the margin).[4] It is very dubious that Ramponi can be brought within the opening words "in the service of a governmental unit" and "receives compensation for such service," when he charges for particular jobs and most of them are. done for private persons. That the statute looks to something in the nature of a salary from the governmental unit for continuous work, rather than particular charges for individual jobs done at request, is shown by the use of the term "salary" in figuring

---

[4] "(*d*) 'Employee', any person in the service of a governmental unit or whose services are divided between two or more governmental units or between a governmental unit and the commonwealth, and who receives compensation for such service or services, whether such person be employed, appointed or elected by popular vote, . . . provided, the duties of such person require no less than twenty hours, regularly, in the service of the governmental unit during the regular work week of permanent or temporary employment, and provided, further that no seasonal employee or emergency employees shall be included; except that persons elected by popular vote may be considered eligible employees during the entire term for which they are elected regardless of the number of hours devoted to the service of the governmental unit. If an employee's services are divided between governmental units, the employee shall, for the purposes of this chapter, be considered an employee of the governmental unit which pays more than fifty per cent of his salary. But, if no one of said governmental units pays more than fifty per cent of said employee's salary, the governmental unit paying the largest share of the salary shall consider the employee as its own for membership purposes, and said governmental unit shall contribute fifty per cent of the cost of the premium. If the payment of an employee's salary is equally divided between governmental units, the governmental unit having the larger or largest population shall contribute fifty per cent of the cost of the premium. If an employee's salary is divided in any manner between a governmental unit and the commonwealth, the governmental unit shall contribute fifty per cent of the cost of the premium. . . . A determination by the appropriate public authority that a person is eligible for participation in the plan of insurance shall be final. . . ."

the contributions by the multiple governmental units where a person works for more than one unit. And quite clearly, Ramponi cannot meet the first proviso, that "the duties of such person require no less than twenty hours, regularly, in the service of the governmental unit during the regular work week," and so on, when he has no fixed duties that require any set number of hours, and does not have a regular work week.[5]

2. The judge below did not enter into the question whether Ramponi qualifies as an "employee" under § 2(*d*). She ruled that the 1974 decision of the selectmen was immovable by them even if it was erroneous. She supported this view by a reference to the next-to-last sentence of § 2(*d*) (last in the quotation at note 4) which states that a determination by the selectmen that a person is eligible shall be "final." We read "final" in this context to mean that a positive determination by the selectmen is the end of the administrative line — there is no administrative body which is a hierarchical superior to the selectmen, capable of reexamining their determination. Ramponi apparently concedes, as in common sense he must, that the selectmen can make a decision under § 2(*d*) favorable to a person, and then, in the light of changed conditions, reverse the decision for the future. It should be equally clear that they may correct for the future a decision based on a mistaken view of the law — an erroneous interpretation of the basic statute.[6] See discussion in *Aronson* v. *Brookline Rent Control Bd.*, 19 Mass. App. Ct. 700 (1985); 2 Davis, Administrative Law Treatise § 18.09, at 605-611 (1958), and at 620 (1970 Supp.); Davis, Administrative Law Text § 18.09, at 369-371 (3d ed. 1972). See also *Boesche* v. *Udall*, 373 U.S. 472 (1963); *Warburton* v. *Warkentin*, 185 Kan. 468, 477 (1959). Compare *American Trucking Assns., Inc.* v. *Frisco Transp. Co.*, 358 U.S. 133, 144-146 (1958). There is, moreover, no equity in the present picture that conceivably

---

[5] Legislative history, showing the evolution of the language now appearing in the proviso, is set out in *Lexington Educ. Assn.* v. *Lexington*, 15 Mass. App. Ct. 749 (1983).

[6] There is no claim that the selectmen would be without power to reverse for the future a decision unfavorable to the person.

might bar the selectmen from conforming now to the law. The corrective decision involves no retroactive impairment of rights or property. By reason of the treasurer's protests, Ramponi knew his credentials were challengeable, and that and worse would have been evident to him or his advisers upon even a casual reading of § 2(*d*). To all this should be added the general principle that estoppel may not be raised against the government. See *Stadium Manor, Inc.* v. *Division of Admin. Law Appeals*, 23 Mass. App. Ct. 958, 962 (1987).

Ramponi says "final" also means that there is no judicial review of the selectmen's first decision declaring him eligible.[7] In a sense this is true: where the decision declares a person eligible, neither the selectmen nor the person wants an appeal. On the other hand, where the selectmen's (second) decision is against the person, judicial review is available: the finality language does not purport and cannot be read to extend to such a case. Indeed, Ramponi acted on that understanding in commencing the present action in Superior Court.

The judgment appealed from is reversed and judgment will enter declaring that the plaintiff is not an "employee" as defined by G. L. c. 32B, § 2(*d*).

*So ordered.*

---

[7] We need not refer to the many instances where statutory statements that administrative action is final have been held not to preclude judicial review. See *Opinion of the Justices*, 251 Mass. 569, 614-616 (1925); *Hough* v. *Contributory Retirement App. Bd.*, 309 Mass. 534, 535 (1941); *Taunton Eastern Little League* v. *Taunton*, 389 Mass. 719, 720 n.1 (1983); *Gudanowski* v. *Northbridge*, 17 Mass. App. Ct. 414, 419-420 (1984).